252 F.3d 473 (D.C. Cir. 2001)
 Murphy Exploration and Production Company, Appellant
v.
United States Department of the Interior and Gale A. Norton, Appellees
 No. 00-5218
 United States Court of Appeals FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued March 8, 2001
Decided June 19, 2001
 
 [Copyrighted Material Omitted]
 Appeal from the United States District Court for the District of Columbia (No. 99cv00570)
 Stephen M. McNabb argued the cause for appellant. With him on the briefs was L. Poe Leggette.
 Ronald M. Spritzer, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were Lois J. Schiffer, Assistant Attorney General, and Jeffrey Dobbins, Attorney.
 Before: Ginsburg, Sentelle and Rogers, Circuit Judges.
 Opinion for the Court filed by Circuit Judge Sentelle.
 Dissenting opinion filed by Circuit Judge Rogers.
 Sentelle, Circuit Judge:
 
 
 1
 Murphy Exploration and Production Co. ("Murphy") appeals the District Court's dismissal, for lack of jurisdiction, of its claim that the Department of the Interior ("DOI") failed to reimburse it for mining royalty overpayments. Murphy's lawsuit invokes the Federal Oil and Gas Royalty Simplification and Fairness Act ("FOGRSFA"), which confers jurisdiction on courts to consider challenges to "administrative proceedings" that the agency fails to resolve within 33 months after they are commenced. Murphy proposes that it commenced such an "administrative proceeding" when it submitted a refund request to DOI. Because we conclude that FOGRSFA's 33-month deadline period begins to run when a party submits a refund request, we hold that the district court erroneously concluded that it lacked jurisdiction to hear Murphy's claim.
 
 I. BACKGROUND
 
 2
 Several acts of Congress confer on DOI the authority to issue leases to mining companies that wish to extract minerals from lands administered by the federal government. See, e.g., the Mineral Leasing Act, 30 U.S.C. 181 et seq., the Mineral Leasing Act for Acquired Lands, 30 U.S.C. 351 et seq., and the Outer Continental Shelf Lands Act, 43 U.S.C. 1331 et seq. As a condition of their leases, lessees must pay the government royalties based on the value of the minerals they produce.
 
 
 3
 In response to a series of court decisions between 1988 and 1998, DOI's Minerals Management Service ("MMS") altered the method it uses to calculate the royalties that producers must pay when they extract gas from its lands. See Diamond Shamrock Exploration Co. v. Hodel, 853 F.2d 1159 (5th Cir. 1988); Independent Petroleum Ass'n of Am. v. Babbitt, 92 F.3d 1248 (D.C. Cir. 1996); In re Century Offshore Mgmt. Corp., 111 F.3d 443 (6th Cir. 1997). Royalties now are based on a company's "gross proceeds." A gas producer's "gross proceeds" include "buydowns" (moneys paid by a purchaser to reduce the price at which gas covered by an initial contract will be sold in the future), but do not include "buyouts" (payments by a gas purchaser to terminate a contract), or "take-or-pay payments" (payments a purchaser is obliged to make even if it does not take the gas it contracted to buy). Mobil Exploration and Producing U.S., Inc., MMS-94-0151OCS (1998); Antelope Prod. Co., MMS-96-0068-O&G (1998).
 
 
 4
 A producer may challenge an MMS order to pay royalties in two ways. First, it may pursue an administrative appeal. 30 C.F.R. Pt. 290. Second, the producer is entitled to immediate judicial review if the agency fails to resolve the royalties dispute timely. The latter type of challenge is authorized by FOGRSFA. Enacted in 1996, FOGRSFA requires DOI's Secretary to "issue a final decision in any administrative proceeding, including any administrative proceedings pending on August 13, 1996, within 33 months from the date such proceeding was commenced or 33 months from August 13, 1996, whichever is later." 30 U.S.C. 1724(h)(1). If the Secretary fails to do so within the allotted time, she "shall be deemed to have issued a final decision in favor of the Secretary ... and the appellant shall have a right to judicial review of such deemed final action in accordance with Title 5." Id. 1724(h)(2)(B). FOGRSFA further defines "administrative proceeding" as "any Department of the Interior agency process in which a demand, decision or order issued by the Secretary ... is subject to appeal or has been appealed." Id. 1702(18). In other words, DOI's failure to resolve an "administrative proceeding" relating to a royalties dispute within 33 months triggers the right to immediate judicial review.
 
 
 5
 In 1999, DOI promulgated regulations interpreting FOGRSFA's 33-month deadline. 64 Fed. Reg. 26,240 (1999). As the agency sees it, 1724(h)'s reference to "any administrative proceedings" includes only administrative appeals--or, to say the same thing, the 33 months begin to run only when a party files a notice of appeal with the agency. "For appeals involving Federal oil and gas leases covered by this new provision, DOI has 33 months from the date a proceeding is commenced to complete all levels of administrative review." Id. at 26,240 (emphasis added). If DOI fails to "decide the appeal within 33 months, the appeal is deemed decided for or against DOI, depending on the type of order and the monetary amount at issue in the appeal." Id. (emphasis added). FOGRSFA's deadline is not triggered, for example, "on the date that an MMS order is received by the recipient." Id. at 26,248.
 
 
 6
 On February 3, 1989, Murphy--a producer that holds oil and gas leases on a number of DOI-administered lands-submitted a refund request claiming that the agency owed it some $4.1 million for past royalty overcharges. Murphy's claim was not resolved for nearly ten years. On November 3, 1998, MMS issued an order instructing Murphy to pay it nearly $368,000 in outstanding royalties. The agency determined that Murphy had overpaid by nearly $990,000 on certain contracts, but that it owed $1.3 million in royalties on certain others. Murphy appealed administratively on December 4, 1998.
 
 
 7
 On March 5, 1999, with its administrative appeal still pending, Murphy challenged the November 3 order in the United States District Court for the District of Columbia. Murphy's lawsuit cited FOGRSFA for the proposition that DOI's failure to resolve timely its refund request was a final agency action entitling it to immediate judicial review. Because, Murphy argued, its refund request set in motion an "agency process" that could result in the Secretary issuing "a demand, decision or order" that "is subject to appeal," 30 U.S.C. 1702(18), it therefore was an "administrative proceeding" within the meaning of FOGRSFA. And because its request had been pending for more than 33 months when the statute was enacted, the company was entitled to immediate judicial review. Murphy also argued that, even assuming the validity of DOI's interpretation of the statute, it was entitled to immediate judicial review of one portion of its refund request--a December 1993 DOI order that it had appealed and that the agency later rescinded. Finally, Murphy argued that, quite apart from FOGRSFA, the expiration of nearly ten years from the filing of its refund request to DOI's November 1998 order constituted an unreasonable delay under Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984).
 
 
 8
 The district court on January 27, 2000 dismissed Murphy's suit for lack of jurisdiction, on the grounds that FOGRSFA's 33-month deadline had not yet expired. Murphy Exploration & Prod. Co. v. Dep't of the Interior, No. 99-570 (D.D.C. Jan. 27, 2000). The court analyzed the statute according to the two-step framework established in Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837 (1984). At step one, the court found FOGRSFA to be ambiguous on the question whether a refund request (or any other proceeding that is not an appeal) is one of the "any administrative proceedings" that triggers the statute's 33-month deadline. Because "Congress cannot be said to have spoken directly to the specific issue at hand," the court proceeded to step two and deferred to DOI's interpretation that FOGRSFA's 33-month period applies only to administrative appeals. Murphy Exploration, slip op. at 13. The court also rejected Murphy's alternative claim that the passage of ten years since it filed its refund request was an unreasonable delay, and hence a reviewable action: "[w]hile the ten-year delay in this case is indeed worrisome, it does not constitute final agency action." Id. at 10.
 
 II. ANALYSIS
 A. Procedural issues
 
 9
 DOI identifies two procedural hurdles which it contends prevent this Court from considering Murphy's argument that the district court had jurisdiction to hear its suit. Both are easily cleared. The agency first claims that Murphy did not preserve this issue for appeal since its complaint did not expressly dispute the lawfulness of DOI's regulations. In fact, Murphy's claim that the district court had jurisdiction is properly before us. The complaint's failure to specifically attack the regulations is irrelevant, since Murphy's suit was not a facial challenge. Rather, the company sought an order to compel DOI to refund what it claimed were royalties overpayments. It was not until the agency challenged the district court's jurisdiction--on the grounds that FOGRSFA's 33-month deadline had not yet expired--that the validity of the regulations became an issue. In response to DOI's motion to dismiss, Murphy explained its view that, agency regulations notwithstanding, FOGRSFA gives it the right to immediate judicial review. Murphy therefore has preserved this issue for appeal.
 
 
 10
 DOI further proposes that Murphy waived its challenge to the agency's interpretation of FOGRSFA because it did not advance that view during the rulemaking process. To be sure, in Ohio v. EPA, 997 F.2d 1520 (D.C. Cir. 1993), we declined to consider an argument that the parties had waived "by failing to raise it during rulemaking proceedings before the agency." Id. at 1528. But Ohio is distinguishable. In that case, the parties had participated in the promulgation of an EPA rule that they then judicially challenged. Because they had taken part in that prior proceeding, it made sense to speak of "the States' failure to raise [their argument] below." Id. By contrast, the record here does not reveal that Murphy participated in the rulemaking that produced DOI's regulations. Because Murphy had no role in the rulemaking, it cannot be said to have "waived" its argument by failing to advance it during those proceedings.
 
 B. Chevron and the Standard of Review
 
 11
 The basic issue in this case is one of statutory construction. Does FOGRSFA's definition of "any administrative proceeding," the commencement of which triggers the statute's 33month deadline, embrace the filing of a refund request? Or is "any administrative proceeding" limited to administrative appeals? Because our task is to measure DOI's regulations against FOGRSFA's text, this case might seem to be an appropriate one for analysis under the rubric of Chevron. Under Chevron, a court must first determine "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842. If so, that "is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. If not--that is, if "the statute is silent or ambiguous with respect to the specific issue"--we will defer to "a reasonable interpretation made by the administrator of an agency." Id. at 843, 844.
 
 
 12
 We conclude, however, that Chevron deference is inappropriate in this case. Chevron does not apply to statutes that, like 1724(h), confer jurisdiction on the federal courts. It is well established that "[i]nterpreting statutes granting jurisdiction to Article III courts is exclusively the province of the courts." Ramey v. Bowsher, 9 F.3d 133, 136 n.7 (D.C. Cir. 1993); see also Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924, 926 (5th Cir. 1975) ("The courts, however, have to make their own determination whether the district court has jurisdiction, rather than defer to the [agency] in the first instance."); cf. Crandon v. United States, 494 U.S. 152, 177 (1990) (Scalia, J., concurring in the judgment) (arguing that Chevron deference is inapplicable to criminal statutes, which are "not administered by any agency but by the courts"). As the Supreme Court has explained, when Congress has "established an enforcement scheme" that gives a party "direct recourse to federal court," it is "inappropriate to consult executive interpretations of [the jurisdiction-conferring statute] to resolve ambiguities surrounding the scope of [the party's] judicially enforceable remedy." Adams Fruit Co., Inc. v. Barrett, 494 U.S. 638, 650 (1990).
 
 
 13
 A principal reason why courts pay agencies no deference on jurisdiction-conferring statutes is that such statutes do not grant powers to agencies. As the Supreme Court has explained, "a congressional delegation of administrative authority" is a "precondition to deference under Chevron." Id. at 649. Unless the agency is the recipient of congressionally delegated power, there is no reason to defer to its interpretations of the statute that does the delegating. The typical Chevron case involves Congress extending an administrative power to an agency--for instance, an act that grants DOI the authority to administer federally owned lands, or a statute empowering the Environmental Protection Agency to regulate nitrogen-oxide emissions. A jurisdiction-conferring statute, by contrast, grants judicial power to the courts--namely the power to hear certain cases or controversies. Because jurisdiction-conferring statutes do not delegate authority to administrative agencies, courts do not extend Chevron deference to an agency's construction of them.
 
 
 14
 It is true that the statute before us contemplates a regulatory role for the agency. However, the implicit delegation of duties concerning the regulations for administrative appeals is limited to precisely that subject and does not extend by its terms or placement to any implication of authority to the agency to "regulate the scope of the judicial power vested by the statute." Id. at 650. As Justice Marshall wrote in Adams Fruit, the fact that "Congress envisioned ... a role for [an administrative agency] in administering [a] statute," by itself "does not empower the Secretary to regulate the scope of the judicial power vested by the statute." Id. Just so here. The fact that an agency has made a determination such as the establishment of regulations governing administrative appeals, does not empower it to " 'bootstrap itself in an area in which it has no jurisdiction,' " id. (quoting Federal Maritime Comm'n v. Three Train Lines, Inc., 411 U.S. 726, 745 (1973) (specifically the grant of jurisdiction to the courts)).
 
 
 15
 Moreover, administrative agencies have no particular expertise in determining the scope of an Article III court's jurisdiction. Of course, "practical agency expertise is one of the principal justifications behind Chevron deference." Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 651-52 (1990). Absent congressional delegation, if an agency has promulgated a regulation outside the scope of its specialized knowledge, courts will not defer to it. See, e.g., Professional Reactor Operator Soc'y v. NRC, 939 F.2d 1047, 1051 (D.C. Cir. 1991) (affording no Chevron deference to agency interpretations of statutes "outside the agency's particular expertise and special charge to administer"). It goes without saying that the jurisdiction of the federal courts is outside agencies' expertise. See, e.g., Florida Manufactured Hous. Ass'n, Inc. v. Cisneros, 53 F.3d 1565, 1574 n.2 (11th Cir. 1995); Ramey, 9 F.3d at 136 n.7 (explaining that "agencies can bring no particular expertise to the subject"). Our holding that DOI's interpretation of FOGRSFA's 33-month deadline is entitled to no deference thus is but a specific application of the general principle that an agency's regulations deserve no deference where they proceed neither from a congressional delegation nor from agency expertise.
 
 
 16
 The inapplicability of Chevron to jurisdiction-conferring statutes is also informed by a federal court's obligation to consider sua sponte its jurisdiction to hear a case. See, e.g., Citizens for Abatement of Aircraft Noise, Inc. v. Metropolitan Wash. Airports Auth., 917 F.2d 48, 53 (D.C. Cir. 1990) ("[I]t is well established that a court of appeals must first satisfy itself of its own jurisdiction, sua sponte if necessary, before proceeding to the merits."), aff'd, 501 U.S. 252 (1991). Courts have an obligation to examine the source of their own power. In the same way that a court must determine for itself that it has the jurisdiction to hear a dispute, even if the parties have so stipulated, a court must determine the scope of a congressional conferral of jurisdiction without consulting the views of an agency. Put another way, neither the parties to a private action nor an administrative agency may dictate the scope of an Article III court's jurisdiction.
 
 C. Jurisdiction under FOGRSFA
 
 17
 Because we conclude that the Chevron framework is inapplicable to FOGRSFA's conferral of jurisdiction on the federal courts, we must decide, as an original matter, whether the district court had jurisdiction to hear Murphy's lawsuit. The outcome depends on what the meaning of the words "any administrative proceeding" is. More precisely, we must consider whether a refund request falls within the statute's definition of "any administrative proceeding"--in other words, whether FOGRSFA's 33-month deadline begins to run when a party files a request for a refund. We hold that it does.
 
 
 18
 As always, in interpreting a statute, we begin with the text of the statute itself. Carter v. United States, 120 S. Ct. 2159, 2170 (2000) ("In analyzing a statute, we begin by examining the text."). As noted above, 30 U.S.C. 1724(h)(1) obliges DOI's Secretary to "issue a final decision in any administrative proceeding, including any administrative proceedings pending on August 13, 1996, within 33 months from the date such proceeding was commenced or 33 months from August 13, 1996, whichever is later." If she fails to do so, FOGRSFA establishes that she "shall be deemed to have issued a final decision in favor of the Secretary ... and the appellant shall have a right to judicial review of such deemed final action in accordance with Title 5." Id. 1724(h)(2). The statute further defines "administrative proceeding" as "any Department of the Interior agency process in which a demand, decision or order issued by the Secretary ... is subject to appeal or has been appealed." Id. 1702(18).
 
 
 19
 We conclude that Murphy's request that DOI refund its royalty overpayments triggered an "administrative proceeding" within the meaning of 1702(18). FOGRSFA makes clear that a private party's refund request is a type of "demand." A "demand" is "a separate written request by a lessee ... which asserts an obligation due the lessee ... that provides a reasonable basis to conclude that the obligation in the amount of the demand is due and owing." Id. 1702(23)(B). Because Murphy's refund request "assert[ed] an obligation" on the part of DOI to compensate it for past royalty overpayments, it was a "demand" for the purposes of FOGRSFA's 33-month deadline. And, because Murphy's "demand" set in motion an "agency process" that could culminate in a DOI order that would be "subject to appeal," it triggered an "administrative proceeding."
 
 
 20
 Moreover, FOGRSFA contemplates that both DOI and private parties are capable of making "demands." See id. 1702(23)(A) (defining DOI-issued "demands"); id. 1702(23)(B) (defining private-party-issued "demands"). To be sure, the statute defines "administrative proceeding" to include "a demand, decision or order issued by the Secretary." Id. 1702(18) (emphasis added). The placement of "issued by the Secretary" arguably implies that the italicized phrase modifies "demand," "decision," and "order." On this interpretation, a private party's "demand" does not, simply by virtue of being a "demand," set in motion an "administrative proceeding." Rather, an "administrative proceeding" can be triggered only by a particular type of "demand"--viz., one that has been "issued by the Secretary."
 
 
 21
 This strikes us as an implausible reading. If 1702(18)'s reference to "demand" is read to denote only that class of "demands" that have been issued by DOI's Secretary, then the term is entirely redundant. This is so because all DOIissued "demands" are also "orders." Id. 1702(23)(A) (defining "demand" to include only a request by a lessee or "an order to pay issued by the Secretary ... to a lessee"). The fact that "demand" and "order" are separately enumerated suggests that Congress viewed them as separate categories. See Gustafson v. Alloyd Co., 513 U.S. 561, 574 (1995) (instructing courts to "avoid a reading [of statutory language] which renders some words altogether redundant"); Parker v. Califano, 561 F.2d 320, 325 (D.C. Cir. 1977) (invoking "the familiar principle that statutory language should be construed so as to avoid redundancy"). We will not assume that Congress intended the definition of "demand" to be perfectly coextensive with "order." Rather, we conclude that "demand" includes both orders to pay issued by DOI, and refund requests submitted by private parties. Either is sufficient to set in motion an "administrative proceeding" within the meaning of 1702(18)--and, hence, to trigger FOGRSFA's 33month deadline.
 
 
 22
 DOI's interpretation of "administrative proceeding" is an unconvincing one for the additional reason that it reads "subject to appeal" out of the statute. FOGRSFA expressly defines as an "administrative proceeding" a "demand, decision, or order" that either "has been appealed" or "is subject to appeal." 30 U.S.C. 1702(18) (emphasis added). But as DOI sees it, "administrative proceeding" refers only to an order that has been appealed, not to an order that could be appealed. 64 Fed. Reg. 26,240, 26,240 (1999) (stating that "DOI has 33 months from the date a proceeding is commenced to complete all levels of administrative review" (emphasis added)). Of course, when "construing a statute we are obliged to give effect, if possible, to every word Congress used." Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979). DOI's reading, under which "subject to appeal" lacks any force, contradicts the "endlessly reiterated principle of statutory construction ... that all words in a statute are to be assigned meaning, and that nothing therein is to be construed as surplusage." Qi-Zhuo v. Meissner, 70 F.3d 136, 139 (D.C. Cir. 1995); see also Halverson v. Slater, 129 F.3d 180, 185 (D.C. Cir. 1997) (invoking "the familiar doctrine that the Congress cannot be presumed to do a futile thing").
 
 
 23
 Nor is it significant that 1724(h) is entitled "appeals and final agency action." It is true, as DOI argues, that "the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." Almendarez-Torres v. United States, 523 U.S. 224, 234 (1998) (internal quotation and citation omitted). But as Almendarez-Torres makes plain, a section's title is a useful device only where its "meaning" is in "doubt." "For interpretative purposes, [it is] of use only when [it] shed[s] light on some ambiguous word or phrase." Pennsylvania Dep't of Corrs. v. Yeskey, 524 U.S. 206, 212 (1998) (citation omitted). When a statute is unambiguous, its title cannot be used to "limit the plain meaning of the text." Id. And as we have explained, FOGRSFA's definition of "administrative proceeding" is plain: The category "administrative proceeding" includes a private party's "demand," which in turn includes a refund request.
 
 
 24
 Even if we accept DOI's invitation to consult 1724(h)'s title, the fact that it speaks of "appeals" does not compel the conclusion that "final agency action" cannot obtain unless a party has filed an administrative appeal. For in addition to "appeals," 1724(h)'s title also includes "final agency action." The subsection performs two functions: It both states that DOI's orders are subject to administrative appeal, and defines when final agency action occurs. It does not imply that an "appeal" is a sine qua non without which "final agency action" cannot exist.
 
 
 25
 Nothing in our dissenting colleague's extended discussion of the canon of the last antecedent disturbs our conclusion that the statutory phrase "issued by the Secretary" does not modify "demand." If anything, it supports that conclusion. Under that canon, as the dissent reminds us, a subsequent modifying phrase "refer[s] solely to the last antecedent, which consists of the last word, phrase, or clause...." Dissent at 2 (quoting 2A Norman Singer, Statutes and Statutory Construction 47:33 (6th ed. 2000)). But that same source confirms that a subsequent phrase may modify an antecedent "phrase," "clause," or "word." Therefore, there is no reason to conclude that "issued by the Secretary" modifies the entire preceding phrase ("demand, decision, or order"), as opposed to the preceding word ("order"). Indeed, the rule as easily supports our conclusion that "issued by the Secretary" does not modify the comparatively remote word "demand" as the dissent's conclusion that "issued by the Secretary" modifies the phrase "demand, decision, or order." The rule of the last antecedent may be sound "grammar," Dissent at 1, 3, but it does not dispose of this case.
 
 
 26
 We conclude that Murphy's February 3, 1989 refund request set in motion an "administrative proceeding" within the meaning of FOGRSFA. Because Murphy's request was pending far longer than 33 months when the statute became effective on August 16, 1996, DOI's failure to resolve it is deemed a "final decision" that triggered a right to immediate judicial review. The district court therefore erred when it concluded that it lacked jurisdiction to hear Murphy's lawsuit.
 
 D. Miscellany
 
 27
 Because we hold that the district court had jurisdiction under FOGRSFA, we need not reach Murphy's alternative argument that the delay between the filing of the refund request and the November 1998 order--which the district court described as "indeed worrisome" but not "final agency action"--triggered a right to judicial review under Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984). Because we conclude that the entirety of Murphy's refund request was within the district court's jurisdiction, we need not address Murphy's alternative claim that the court had jurisdiction over one specific portion: its challenge to DOI's December 1993 order.
 
 III. CONCLUSION
 
 28
 Chevron deference is inappropriate in this case because FOGRSFA's conferral of jurisdiction is a grant of power to the federal courts, not to an administrative agency. Applying de novo review, we conclude that a refund request is an "administrative proceeding" within the meaning of FOGRSFA. In other words, the statute's 33-month deadline begins to run when a party submits a refund request. The district court therefore had jurisdiction to hear Murphy's challenge to DOI's November 1998 order, and we reverse its dismissal of Murphy's lawsuit.
 
 Rogers, Circuit Judge, dissenting:
 
 29
 In dismissing the complaint for lack of jurisdiction, the district court observed that the 10-year delay by the Department of the Interior ("DOI") in addressing the refund request of appellant Murphy Exploration and Production Co. ("Murphy") was "worrisome." However worrisome that delay may be, the only question for this court is whether Congress provided in the Federal Oil and Gas Royalty Simplification and Fairness Act the relief that Murphy claims entitles it to review in the federal district court. Because the statutory text, structure, and legislative history demonstrate that Congress intended for the statute to shorten only delays in the agency administrative process following initial action by DOI, and because the court's contrary interpretation robs the statute of its logical and natural meaning, I dissent.
 
 
 30
 At the heart of my disagreement with the court is the term "administrative proceeding," which is defined in the statute as "any Department of the Interior agency process in which a demand, decision, or order issued by the Secretary ... is subject to appeal or has been appealed." 30 U.S.C. 1702(18) (emphasis added). The court correctly reasons that "a private party's refund request is a type of 'demand.' " Opinion at __. However, the court then curiously states that it is merely arguable that the phrase "issued by the Secretary" that it modifies "demand," "decision," and "order." See opinion at __.
 
 
 31
 This point does not seem arguable because basic "rules of grammar apply in statutory construction." Anhydrides & Chemicals, Inc. v. United States, 130 F.3d 1481, 1483 (Fed. Cir. 1997). Specifically, the rule of the last antecedent applies here, and the court has observed that it is "one of the simplest canons of statutory construction." United States v. Pritchett, 470 F.2d 455, 459 n.9 (D.C. Cir. 1972). As defined by the court, the rule states: "Ordinarily, qualifying phrases are to be applied to the words or phrase immediately preceding and are not to be construed as extending to others more remote. This ... is not an inflexible rule, and is not applied where the context indicates otherwise." Id. at 459 (footnote omitted). A treatise definition of the rule is similar: "Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent [, which consists of] the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." Norman Singer, 2A Statutes and Statutory Construction 47:33 (6th ed. 2000) (footnote and internal quotation marks omitted).
 
 
 32
 The rule of the last antecedent compels the conclusion that "issued by the Secretary" modifies "demand," "decision," and "order." This is the most natural reading of the statute because these three nouns are similar, are placed next to each other, and are all capable of being modified by "issued by the Secretary." Ordinarily, adjectival modifiers are placed closest to the nouns they modify, and to avoid ambiguity or confusion, nouns that are not modified are set apart from nouns that are modified. Congress would have drafted the statute differently if it had intended to convey the meaning that the court finds. Cf. Gustafson v. Alloyd Co. Inc., 513 U.S. 561, 575 (1995). If Congress had not intended for "issued by the Secretary" to modify all three nouns, "Congress with ease could have drafted [§ 1702(18)] to read"[1]: "any agency process in which a decision or order issued by the Secretary, or a demand, is subject to appeal." Thus, the most plausible conclusion is that Congress meant for "issued by the Secretary" to modify "demand."
 
 
 33
 The court suggests that because an antecedent is sometimes a single "word" instead of a "phrase," the rule supports the conclusion that "issued by the Secretary" only modifies the word "order." See opinion at __.[2] This application of the rule guts it of all practical meaning. How are we to determine if the relevant antecedent is just a single word, or if it is a larger phrase? The rule itself provides guidance, as it encourages us to extend the reach of the modifying phrase as far as is possible "without impairing the meaning of the sentence." The Supreme Court has also provided useful advice: "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." Porto Rico Ry., Light & Power Co. v. Mor, 253 U.S. 345, 348 (1920). Furthermore, the court's application of the rule is in conflict with cases like Pritchett, which make clear that the rule does not endorse parsing antecedent clauses to limit the meaning of a modifying phrase to a single word. In Pritchett, this court considered a statute that referred to "members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves when on duty." Pritchett, 470 F.2d at 456. Not surprisingly, the court construed the modifying phrase "when on duty" to apply to all of the service members listed, not just members of the Reserves. See id. at 459-61. Thus, the court has misapplied the rule.
 
 
 34
 Not only has the court failed to point to any reason why the ordinary rule of the last antecedent does not apply, the court fails to identify any contextual clues in the statutory language indicating that "demand" should be considered separately from "decision" and "order." Instead, the court relies on another canon of statutory interpretation, in effect asserting that the natural reading of the statute is implausible because it makes the term "demand" redundant. The court's approach is flawed for two reasons. First, although statutory interpretation should proceed in a manner that avoids redundancy, see Gustafson, 513 U.S. at 574, this principle is not a license to ignore fundamental principles of grammar. The court points to no authority suggesting that an antecedent clause can be parsed in such an unnatural manner, or that grammar rules can be suspended to avoid redundancy. Second, the court's reading does not really avoid redundancy in the statutory language; it just creates a different kind of redundancy. If the phrase "issued by the Secretary" modifies only "order" (or if it modifies both "decision" and "order," an even more improbable reading), then it is surplusage because, for the purposes of this statute, only the Secretary (or a delegated State) can issue decisions and orders. See 30 U.S.C. 1702. The phrase "issued by the Secretary" is stripped of much of its meaning unless it is construed to modify "demand."
 
 
 35
 The type of redundancy that cases like Gustafson warn against is not at issue here. See opinion at __. In Gustafson, a broad definition of the word "communication" threatened completely to overshadow four other words in a definitional list ("notice, circular, advertisement, [and] letter"), making them "altogether redundant." Gustafson, 513 U.S. at 573-74. Such a broad definition would have made the relevant statute's reach more expansive than Congress intended, and inconsistent with "the background of what Congress was attempting to accomplish in enacting [it]." Id. at 575. In contrast, if "demand" is modified by "issued by the Secretary," the resulting overlap between "demand" and "order" is far less problematic. Were the court's excessively strict view of what redundancy means to prevail generally, then other definitions in 1702 would also be redundant. For example, "Indian tribe" is defined to "mean any Indian tribe, band, nation, pueblo, community, rancheria, colony, or other group of Indians." 30 U.S.C. 1702(4). No less than each of these words, the terms "order" and "demand" overlap, but they also convey distinct meanings. Congress simply chose to define the statute's terms using words that do not each possess mutually exclusive and wholly independent meanings. The fact that all demands issued by the Secretary are also orders (although all orders are not necessarily demands) does not mean that basic grammatical rules should be violated to wring extra meaning out of the antecedent clause.
 
 
 36
 The court's reliance on Gustafson is misplaced for another reason as well. In Gustafson, the Supreme Court cautioned against "reliance on one word ... in isolation," and stated that a disputed phrase "must be read in its entirety." Gustafson, 513 U.S. at 574. The Supreme Court refused to pluck one word out of a list, preferring to read the word in context so that its meaning would not be unreasonably expanded. See id. Here, the court divorces "demand" from its natural and appropriate context when it refuses to apply the phrase that modifies it. Other aspects of the statutory language also help to show that the 33-month deadline cannot be triggered when a private party files a refund request. Section 1724(h) repeatedly uses the terms "appeal" and "appellant." For example, it provides that "[d]emands or orders issued by the Secretary are subject to administrative appeal," that a private party's "immediate appeal of an order" should not be hindered, and that "[t]he 33-month period may be extended by any period of time agreed upon in writing by the Secretary and the appellant." 30 U.S.C. 1724(h). These references to "appeal" and "appellant" establish the context of 1724(h) and confirm that it was not meant to limit the time that the Secretary has to respond initially to refund requests. The court ignores the statute's repeated use of the terms "appeal" and "appellant."
 
 
 37
 The structure of the statute also points to the implausibility of the court's construction that "issued by the Secretary" should be read not to modify "demand." Private parties' demands and refund requests are not subject to administrative appeal in the absence of action by the Secretary. Logically, only demands issued by the Secretary can be appealed; a private party cannot appeal its own refund request. The statute provides that "[d]emands or orders issued by the Secretary or a delegated State are subject to administrative appeal in accordance with the regulations of the Secretary." Id. 1724(h). In this part of the statute, as in 1702(18), the phrase "issued by the Secretary" is properly construed to modify both "demands" and "orders."
 
 
 38
 It is obvious that a private party's demand can lead to a DOI order, and that DOI order, in turn, is subject to appeal. See opinion at __. However, the court engages in interpretive sleight of hand when it states that "because Murphy's 'demand' set in motion an 'agency process' that could culminate in a DOI order that would be 'subject to appeal,' it triggered an 'administrative proceeding.' " Opinion at __. If, as the court concludes, the term "demand" in the definition of "administrative proceeding" extends to refund requests, then under its interpretation the relevant reading of "administrative proceeding" would be "the agency process in which a refund request is subject to appeal." But of course a refund request itself cannot be subject to appeal. Similarly, for example, even though a tort claim might lead to a judicial decision that is subject to appeal, it would be odd to characterize a tort claim itself, in the absence of any adjudication, as "subject to appeal."
 
 
 39
 Perhaps the court interprets the term "agency process," as used in 1702(18), to be so expansive that it is appropriate to read into the statute the unmentioned, but obviously necessary, step of DOI's order in response to a refund request. See opinion at __. Although as a general principle every word in a statute should be construed to have meaning, see Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979), in this context it is implausible to suggest that Congress' use of the term "agency process" means that a refund request can itself be considered "subject to appeal" for purposes of triggering the 33-month time limit. Put otherwise, the agency must act for the phrase "subject to appeal" to have meaning. The court's reasoning, however, bootstraps a significant agency action--an order issued in response to a refund request--into the meaning of the statute.
 
 
 40
 In contrast with the court's strained construction, DOI has proposed a more reasonable way to interpret Congress' reference to "agency process" in conjunction with the phrases "is subject to appeal" and "has been appealed." The agency "recognizes that the 33-month deadline was intended to apply to (1) appeals that were already pending when [the statute] was enacted, and (2) appeals of future agency demands, decisions, and orders." Br. for Appellee at 38. The " 'agency process in which a demand, decision, or order issued by the Secretary ... has been appealed,' refers to the agency process for resolving those appeals already pending when [the statute] took effect" on August 13, 1996. Id. Such appeals must be resolved by May 13, 1999, 33 months after the date the statute took effect. The statute's reference to an "agency process in which a demand, decision, or order issued by the Secretary ... is subject to appeal," simply pertains to the agency process for resolving appeals of demands, decisions, and orders issued by the Secretary after the statute was enacted. See id.
 
 
 41
 The legislative history of the statute also supports the conclusion that a private party's refund request cannot trigger the 33-month deadline. For example, the House Report generally describes one of the reforms of the new law as "placing a time limit on administrative appeals." H.R. Rep. No. 104-667, at 15 (1996), reprinted in 1996 U.S.C.C.A.N. 1442, 1444. More specifically, the House Report describes the section that was codified as 1724(h) as "requir[ing] the Secretary of the Interior to take a final departmental action on appealed claims within 33 months." Id. at 18, reprinted in 1996 U.S.C.C.A.N. 1442, 1448 (emphasis added). This is consistent with the overall goal of 1724(h) reflecting Congressional intent to make the agency appeals process more efficient, thus accelerating "the collection of onshore and offshore oil and gas royalty payments from Federal lands." Id. at 14, reprinted in 1996 U.S.C.C.A.N. 1442, 1442.
 
 
 42
 The legislative history underscores the point that Congress knew exactly how to write a statute to state that filing a refund request could trigger an "administrative proceeding." The first Senate version of the bill provided that " 'administrative proceeding' means any agency process for rulemaking, adjudication or licensing," and that an administrative proceeding could be commenced by "the receipt by the Secretary of a written request or demand by a lessee." 141 Cong. Rec. S9517-02, S9539 (1995). This language did not survive in the final legislation enacted by Congress. The absence of such clear language in the final legislation enacted into law is fair notice that the meaning of the statute has changed. Cf. Booth v. Churner, ___ U.S. ___, 121 S.Ct. 1819, 1824-25, ___ L.Ed.2d ___ (2001). The court nonetheless reads back into the statute provisions that Congress eliminated.
 
 
 43
 Based on the plain language, structure, and legislative history of the statute, therefore, I would hold that for the purposes of 1724(h), an administrative proceeding cannot be commenced when a private party files a refund request. Accordingly, I would affirm the dismissal of the complaint for lack of jurisdiction.[3]
 
 
 
 Notes:
 
 
 [1]
 Id.
 
 
 [2]
 In quoting the rule of the last antecedent, the court omits in its ellipsis key language, namely, "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." See opinion at __ (omitting italicized language).
 
 
 [3]
 Murphy's other contentions lack merit. First, Murphy suggests that the ten-year delay between the filing of its refund request and DOI's November 1998 order was unreasonable, and that under the principles of Telecommunications Research and Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"), the district court should have regarded the 1998 order as final agency action. However, the remedy for unreasonable agency delay is for the court to order the agency to expedite its administrative processes and issue a final decision within a time frame set by the court, or to explain its refusal to act. Murphy did not request such relief, but sought a substantive determination on the merits. Moreover, because DOI has acted and the 33-month time period has not expired, the delay is "worrisome," but not unreasonable under TRAC. Second, Murphy's challenge to the December 1993 order fails because its amended complaint does not mention that order. See Kennecott Utah Copper Corp. v. DOI, 88 F.3d 1191, 1202-03 (D.C. Cir. 1996).