# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 7, 2012          Decided February 22, 2013

No. 12-5075

NICK KORETOFF, DOING BUSINESS AS NICK KORETOFF
RANCHES, ET AL.,
APPELLANTS

v.

TOM VILSACK, SECRETARY, UNITED STATES DEPARTMENT OF
AGRICULTURE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-01558)

———

*John H. Vetne* argued the cause for appellants.  With him on the briefs was *Susan Silber*.

*David A. Nauheim* and *James S. Turner* were on the brief for *amici curiae* Alliance for Natural Health USA, et al. in support of appellants.

*Michael P. Abate*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, *Michael S. Raab*, Attorney, and *Andrew R. Varcoe*, Attorney, U.S. Department of Agriculture.

Before: TATEL and BROWN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

Concurring opinion filed by *Senior Circuit Judge* WILLIAMS.

PER CURIAM: Appellants, California almond producers, claim that the Secretary of Agriculture, seeking to prevent the spread of salmonella, exceeded his authority in requiring California almonds sold domestically to be treated with heat or chemicals. The district court granted summary judgment for the Secretary. Finding that appellants have waived their claims by failing to raise them during the rulemaking process, we affirm.

## I.

Under the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. §§ 601–74 ("AMAA"), the Secretary of Agriculture may issue marketing orders binding "handlers" of commodities such as almonds. 7 U.S.C. § 608c(1)–(2). While "producers" grow commodities, commodity handlers are "processors, associations of producers, and others engaged in the handling" of commodities. *Id.* § 608c(1). As relevant here, marketing orders may provide "terms and conditions . . . [l]imiting, or providing methods for the limitation of, the total quantity of any such commodity or product, or of any grade, size, or quality thereof." *Id.* § 608c(6)(A). For a marketing order to become effective, the handlers responsible for at least half the volume of the commodity in the covered area must approve it. *Id.* § 608c(8). The Secretary, however, may impose a marketing order without handler consent if, among other things, he finds that the order is "the only practical

means of advancing the interests of the producers." *Id.* § 608c(9).

California almond handlers are subject to the California Almond Marketing Order, 7 C.F.R. pt. 981. The Almond Order provides for "quality control" of almonds, allowing the Secretary to approve "such minimum quality and inspection requirements applicable to almonds to be handled . . . as will contribute to orderly marketing or be in the public interest." 7 C.F.R. § 981.42(b).

After two salmonella outbreaks were linked to almonds grown in California, the Secretary published in the Federal Register a proposed rule requiring handlers to treat almonds sold domestically with heat or chemicals. Almonds Grown in California; Outgoing Quality Control Requirements and Request for Approval of New Information Collection, 71 Fed. Reg. 70,683 (Dec. 6, 2006). Every California almond producer was mailed a brochure that explained the proposed rule and encouraged producers to "take part in the public process." After receiving comments and modifying the proposal somewhat to address issues raised, the Secretary adopted the treatment rule as a "quality control" requirement under the Almond Order. Almonds Grown in California; Outgoing Quality Control Requirements, 72 Fed. Reg. 15,021, 15,021–22, 15,029–33 (Mar. 30, 2007) ("Treatment Rule").

Several almond producers challenged the treatment rule under the Administrative Procedure Act. The producers claimed that the treatment rule exceeded the Secretary's authority under both the AMAA and the Almond Order. Although conceding that the Secretary may prohibit the sale of contaminated almonds under his authority to limit almond quality, the producers contended that the Secretary lacks authority to require the treatment of all almonds irrespective

of whether they are contaminated. The producers also claimed that almond handlers withdrew their support for the Almond Order in 1996 and that the Secretary never determined that the treatment rule is "the only practical means of advancing the interests of the producers," as the AMAA requires for orders lacking handler support. 7 U.S.C. § 608c(9)(B). The district court, finding that the Secretary had authority to issue the rule and that the producers had waived their claim about the "only practical means" determination, granted summary judgment for the Secretary. *Koretoff v. Vilsack*, 841 F. Supp. 2d 1 (D.D.C. 2012). The producers now appeal, reiterating the arguments they made in the district court.

## II.

The Secretary argues that the producers have waived all their claims by failing to raise them during notice and comment. *See Advocates for Highway & Auto Safety v. FMCSA*, 429 F.3d 1136, 1150 (D.C. Cir. 2005) ("[A] party will normally forfeit an opportunity to challenge an agency rulemaking on a ground that was not first presented to the agency for its initial consideration."). Although these particular producers did not participate in the rulemaking process, they nonetheless insist that their arguments about the Secretary's authority to issue the rule are preserved for two reasons.

First, the producers argue that an exception to the waiver doctrine applies because "[t]he issues were presented to (and resolved by) the agency." Appellants' Reply Br. 7. Although conceding that none of the producers who did comment made this argument during the rulemaking, the producers maintain that "the question of agency authority to issue a mandatory processing rule was expressly raised *early* in the rule development process," pointing to a meeting attended by a

Department of Agriculture representative in which "it was asked if [the Secretary] has authority to mandate a kill step process." Appellants' Reply Br. 7–8, 8 n.4 (emphasis added). The representative replied that the Department was "investigating the issue" and reported back a week later that "there is legal authority under the Marketing Order" to "implement a mandatory treatment or 'pasteurization' program." Appellants' Reply Br. 8 n.4.

Under our case law, this was insufficient to preserve the issue. Nothing in the record suggests that the Secretary considered the producers' specific argument, i.e., that although the Secretary may prohibit the sale of contaminated almonds, he lacks authority to require the treatment of all almonds irrespective of whether they are contaminated. We require "the argument [petitioner] advances here" to be raised before the agency, not merely the same general legal issue. *Nuclear Energy Institute, Inc. v. EPA*, 373 F.3d 1251, 1291 (D.C. Cir. 2004) (per curiam). "While there are surely limits on the level of congruity required between a party's arguments before an administrative agency and the court, respect for agencies' proper role in the *Chevron* framework requires that the court be particularly careful to ensure that challenges to an agency's interpretation of its governing statute are first raised in the administrative forum." *NRDC v. EPA*, 25 F.3d 1063, 1074 (D.C. Cir. 1994). Furthermore, as the producers themselves make clear in their brief, the issue considered at the meeting related only to the Secretary's authority under the Almond Order, not the statute.

Second, the producers argue that the Secretary was "obligated under the APA to address [his] statutory authority *sua sponte*," whether "raised by a commenter or not." Appellants' Reply Br. 7–9. It is certainly true that agencies are required to ensure that they have authority to issue a

particular regulation. *See* 5 U.S.C. § 553(b)(2) ("The notice [of proposed rulemaking] shall include . . . reference to the legal authority under which the rule is proposed . . . ."). But as we have repeatedly made clear, agencies have no obligation to anticipate every conceivable argument about why they might lack such statutory authority. *See, e.g.*, *Ohio v. EPA*, 997 F.2d 1520, 1528–29 (D.C. Cir. 1993) (finding waived argument that rule violated statute). Here, the Secretary expressly stated that he was issuing the treatment rule under his AMAA and Almond Order authority to regulate almond quality. Treatment Rule, 72 Fed. Reg. at 15,021–22 ("This rule adds outgoing quality control requirements under the administrative rules and regulations of the California almond marketing order . . . . The order is effective under the [AMAA] . . . ."). Absent a comment arguing otherwise, he had no further obligation.

Finally, we agree with the district court that the producers waived their argument that the Secretary needed to determine that the Almond Order was "the only practical means of advancing the interests of the producers." According to the producers, they had no way to raise the Secretary's failure to make an "only practical means" determination because such determinations "are first made by the Secretary, if at all, only in the final rulemaking document." Appellants' Br. 64. But the Secretary never considered whether an "only practical means" determination was necessary for one simple reason: no one suggested during the rulemaking that such a determination was required. If the producers believed that an "only practical means" determination was necessary because the Almond Order has lacked handler support since 1996, they had ample opportunity to alert the Secretary before he issued the treatment rule.

## III.

For the reasons stated above, we affirm the district court's grant of summary judgment for the Secretary. In doing so, we emphasize that nothing in this opinion affects the producers' ability to raise their statutory arguments if and when the Secretary applies the rule. *See Murphy Exploration & Production Co. v. U.S. Department of Interior*, 270 F.3d 957, 958 (D.C. Cir. 2001) ("Nothing . . . prevents [plaintiff] from pursuing its claim in a second forum, *i.e.*, apart from the original rulemaking, if such a forum is otherwise available. As we have held before, such a forum is available to a party when a rule is brought before this court for review of further agency action applying it." (internal quotation marks omitted)).

*So ordered.*

WILLIAMS, *Senior Circuit Judge*, concurring:  I concur in the opinion of the court.  I write separately primarily to note that in the realm of judicial review of agency rules, much of the language of our opinions on "waiver" has been a good deal broader than the actual pattern of our holdings, and that that pattern itself may unfairly disadvantage parties that generally are not well represented by interest groups.

Some of our cases suggest that parties seeking review of an agency rule issued through notice-and-comment rulemaking may raise only those issues that they presented to the agency in the rulemaking.  For example: "It is well established that issues not raised in comments before the agency are waived and this Court will not consider them." *Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 562 (D.C. Cir. 2002) (per curiam).  But see *City of Seabrook v. EPA*, 659 F.2d 1349, 1360-61 (5th Cir. 1981) (refusing to impose any such requirement on objections to EPA approval of a state implementation plan).[1]  Indeed, the government's brief in this

---

[1] *Seabrook*'s own fate has wobbled.  The Fifth Circuit followed it in *American Forest & Paper Ass'n v. EPA*, 137 F.3d 291 (5th Cir. 1998), noting that it "remains valid."  But in *BCCA Appeal Group v. EPA*, 355 F.3d 817, 828-29 & n.10 (5th Cir. 2003), the court accepted the government's argument that a party waived its objections to a state implementation plan by failing to comment during the administrative proceedings.  The court distinguished *Seabrook* as involving a "purely legal" determination of whether the agency properly made the findings required by statute, whereas *BCCA* involved "an obligation [not] expressly imposed by the [Clean Air Act]."  *Id.* at 829 n.10.  The court also criticized *Seabrook* on its merits, explaining that "in recent years the court has stepped back from *Seabrook*'s holding on waiver, and has even applied the waiver doctrine to bar its consideration of claims that were not raised before the EPA in similar situations as the present dispute."  *Id.* (citing cases).

case stretched the principle still further, throwing into the hopper a case involving an adjudication rather than a rulemaking, *Orion Reserves Ltd. P'ship v. Salazar*, 553 F.3d 697 (D.C. Cir. 2009), even though parties to a litigation obviously have a far clearer burden to speak up to protect their interests than do all of the potentially millions of persons that may be affected by a rulemaking.

These broad statements disregard one context where they are flatly wrong. As the court's opinion notes, we have distinguished between a direct challenge to a rule on enactment and a challenge to the rule when applied. *Murphy Exploration & Prod. Co. v. U.S. Dep't of Interior*, 270 F.3d 957, 958 (D.C. Cir. 2001). In *Murphy* we stated the waiver rule in terms of "the incontrovertible proposition that one may not present an argument on appeal without having first raised it below, *i.e.*, in the proceedings from which the litigant appeals." *Id.* Thus a party that has objected in the rulemaking can raise its claim in a facial challenge in court, and a party attacking the rule in the agency's own application proceedings can similarly extend the attack on appeal from the agency. In explaining why failure to raise a claim in the rulemaking was not a bar to an application challenge, we drew an analogy to our cases holding that a party's missing a statutory deadline for *facial* review of a regulation would not bar its challenge on "review of further [agency] action *applying* it." *Id.* (emphasis added) (citing *Functional Music, Inc. v. FCC*, 274 F.2d 543, 546-47 (D.C. Cir. 1958)). For other cases applying the

This tension between the Fifth Circuit's cases has been noted, see, e.g., *Fleming Cos. v. USDA*, 322 F. Supp. 2d 744, 753-54 (E.D. Tex. 2004), but apparently not resolved. Some other circuits have also declined to follow *Seabrook*. See, e.g., *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1020 n.3 (9th Cir. 2004); *1000 Friends of Md. v. Browner*, 265 F.3d 216, 228 n.7 (4th Cir. 2001).

principle as to missed statutory deadlines, see *Independent Community Bankers of America v. Board of Governors of the Federal Reserve System*, 195 F.3d 28, 33-35 (D.C. Cir. 1999) (citing cases), and *NLRB Union v. Federal Labor Relations Authority*, 834 F.2d 191, 195-99 (D.C. Cir. 1987) (citing cases). Of course where a statute specifically precludes even an application challenge if the claim was not timely raised before the agency, we necessarily honor the statute unless the challenger poses a valid constitutional objection. See, e.g., *Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 911, 914 (D.C. Cir. 1985).[2]

Thus a party is barred from making facial claims that were not raised in the rulemaking process,[3] even ones that are ripe within the meaning of *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967); but a timely objection at the application stage preserves the party's rights. The upshot is that, with limited exceptions—for example, in cases where an agency may act without affording a pre-deprivation hearing and the affected party can and does immediately challenge the action in court, see, e.g., *James Madison Ltd. v. Ludwig*, 82 F.3d

---

[2] That principle is subject to an exception based on ripeness concepts. See *Clean Air Implementation Project v. EPA*, 150 F.3d 1200, 1204 (D.C. Cir. 1998) (noting that, notwithstanding the time limit in the Clean Air Act's review provision, 42 U.S.C. § 7607(b), it is a "necessary corollary" of the ripeness doctrine that if issues that were unripe on direct challenge "later become justiciable, as a result for instance of an enforcement action, the petitioner may then raise those issues").

[3] This formulation of the matter assumes, as is normally the case, that the waiver rule would not bar a facial challenge if the agency has actually addressed the issue, either sua sponte or at the behest of another party. See, e.g., *Ohio v. EPA*, 997 F.2d 1520, 1529 (D.C. Cir. 1993).

4

1085, 1092-95 (D.C. Cir. 1996); *Holiday CVS, LLC v. Holder*, 839 F. Supp. 2d 145 (D.D.C. 2012), or in cases such as *McKart v. United States*, 395 U.S. 185 (1969)—courts do not hear claims that the agency has had no opportunity to respond to or perhaps, to adapt to or adopt.  This tends to economize on effort on the part of courts, agencies and to some extent even parties, including reducing the need for shuttling cases back to the agency for an explanation of its choices.  See generally *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943).  It further increases the potential benefits of the notice-and-comment process itself.

Generally speaking, then, the price for a ticket to facial review is to raise objections in the rulemaking.  This system probably operates quite well for large industry associations and consumer or environmental groups (and the firms and individuals thus represented).  But for some the impact is more severe.  Firms filling niche markets, for example, as appellants appear to be, may be ill-represented by broad industry groups and unlikely to be adequately lawyered-up at the rulemaking stage.  As the Fifth Circuit observed, we presumably do not want to "require everyone who wishes to protect himself from arbitrary agency action not only to become a faithful reader of the notices of proposed rulemaking published each day in the *Federal Register*, but a psychic able to predict the possible changes that could be made in the proposal when the rule is finally promulgated." *City of Seabrook*, 659 F.2d at 1360-61.  For expressions of similar doubts from this circuit, see *Gage v. United States Atomic Energy Commission*, 479 F.2d 1214, 1218-19 (D.C. Cir. 1973); see also 32 Charles A. Wright & Charles H. Koch, Jr., *Federal Practice & Procedure* § 8174 (2012 ed.) (explaining that "[m]any may be affected in various degrees by numerous rulemaking efforts" but "[c]itizens cannot participate in all the rulemakings which might affect us").

A decision of our court has suggested a principle that would open the door to facial challenges by such mavericks. In *Murphy Exploration & Production Co. v. U.S. Department of Interior*, 252 F.3d 473 (D.C. Cir. 2001), predecessor of the *Murphy* referred to earlier, we said that where a party had participated in the rulemaking, "it made sense to speak of [the party's] failure to raise [its argument] below." *Id*. at 478. But that could not rightly be said where there was no indication that the plaintiff had participated in the rulemaking in any way. *Id*. Thus we found no waiver.

Such a principle would provide facial review for parties who don't bother to participate in the rulemaking—probably a group largely coincident with parties who fail to anticipate its inflicting serious costs on their interests. (Of course there would be some risk that the rule might induce strategic behavior expanding that group: non-participation in order to get facial review without disclosing one's position to the agency. It's not clear that such a strategy presents many advantages.) The argument for allowing facial review under these circumstances is of course at its strongest where the issue posed cannot require a remand to the agency (e.g., a claim under *Chevron*'s "first step") and the hardship to the plaintiff from delay (see *Abbott Labs*, 387 U.S. at 148-49, 153) is especially acute.

The first *Murphy* decision (cited immediately above) is, however, not binding circuit law. After the opinion was issued, the government submitted evidence that the challenger had, in fact, participated in the rulemaking proceeding, and the panel—in the *Murphy* decision cited earlier—vacated the relevant part of the opinion. See *Murphy*, 270 F.3d at 958. The panel's reasoning, of course, remains available to future panels.

In this case, however, it seems appropriate to follow the general principle that we "take the dispute as the parties frame it." *Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118, 125 (D.C. Cir. 1999). I agree with the panel that appellants in this case did not frame the dispute in any of the terms set forth above, so it would be inappropriate to resolve such possible variations of the waiver doctrine in this case.