CORE COMMUNICATIONS, INC.

v.

VERIZON PENNSYLVANIA, INC.

No. Civ.A. 04–4513.

United States District Court, E.D. Pennsylvania.

March 21, 2006.

Barry W. Krengel, Dolchin Slotkin and Todd P.C., Philadelphia, PA, Cathy Hinger, Deborah Israel, Louis Rouleau, Michael B. Hazzard, Washington, DC, for Plaintiffs.

Joseph M. Ruggiero, Leigh A. Hyer, Verizon Communications, General Counsel, Arlington, VA, Richard P. Limburg, H. David Seidman, Obermayer Rebmann Maxwell & Hippel LLP, William B. Petersen, Verison Communications, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

SAVAGE, District Judge.

This case raises the question: does the Congressional grant of authority to a state commission to approve an interconnection agreement between incumbent and competing carriers in the intrastate telephone market, pursuant to § 252 of the Telecommunications Act of 1996, implicitly extend to the interpretation and enforcement of an agreement it has approved? The Supreme Court has not decided the issue. Nor has the Third Circuit Court of Appeals. The Fourth, Fifth, Sixth, Seventh, Eighth, Tenth and Eleventh Circuits have determined that a state commission does

have the authority to interpret and enforce interconnection agreements it has approved pursuant to 47 U.S.C. § 252 ("§ 252").[1] No circuit court has held to the contrary.

Core Communications, Inc., ("Core") brought this action against Verizon Pennsylvania, Inc. ("Verizon"), alleging violations of the Communications Act of 1934 ("1934 Act") and the Telecommunications Act of 1996 ("TCA"), breach of contract and fraud, arising out of Verizon's alleged breach of an interconnection agreement that had been approved by the Pennsylvania Utility Commission ("PUC") pursuant to the TCA. Verizon has moved to dismiss the complaint, contending that the district court does not have subject matter jurisdiction because jurisdiction to interpret and enforce interconnection agreements lies with the Pennsylvania Utility Commission. Core, on the other hand, argues that there is both federal question and diversity jurisdiction. At the center of the jurisdictional dispute is the tension created by the TCA's cooperative federalism approach.[2]

Looking at the purpose of the TCA and the language of § 252(e)(6), I conclude that the TCA does not divest the district court of subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332 because the complaint states violations of federal law raising federal questions, and the parties are diverse and the jurisdictional amount is satisfied. However, *Chevron* deference requires that I adhere to the Federal Communication Commission's ("FCC") ruling that the state commission has the authority, in the first instance, to interpret and enforce interconnection agreements that it has approved. Therefore, even though doing so will delay final adjudication of the dispute which could ultimately be decided in the district court, I must grant Verizon's motion to dismiss.

## Interconnection Agreements

In the wake of the break up of telephone giant Bell System, local telephone service was monopolized by companies granted exclusive franchises by the states. In 1996, when it enacted the TCA, amending the 1934 Act, Congress opened the door to competition in the local telephone market

---

1. *Bell Atlantic Md., Inc., v. MCI Worldcom, Inc.,* 240 F.3d 279 (4th Cir.2001), *vacated on other grounds, Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002); *Southwestern Bell Tel. Co. v. Pub. Util. Comm'n of Tex.,* 208 F.3d 475 (5th Cir.2000); *Michigan Bell Tel. Co. v. MCIMetro Access Transmission Servs., Inc.,* 323 F.3d 348 (6th Cir.2003); *Ill. Bell Tel. Co. v. Worldcom Techs., Inc.,* 179 F.3d 566 (7th Cir.1999); *Southwestern Bell Tel. Co. v. Connect Commc'ns Corp.,* 225 F.3d 942 (8th Cir. 2000); *Southwestern Bell Tel. Co. v. Brooks Fiber Commc'ns of Okla., Inc.,* 235 F.3d 493 (10th Cir.2000); *BellSouth Telecomm., Inc. v. MCImetro Access Transmission Servs., Inc.,* 317 F.3d 1270 (11th Cir.2003) (*en banc*). The First Circuit recognized the issue but declined to resolve it, assuming *arguendo* that state commissions had authority to interpret and enforce agreements. *P.R. Tel. Co. v. Telecomms. Regulatory Bd. of P.R,* 189 F.3d 1 (1st Cir.1999).

2. Described by commentators as a model of cooperative federalism, the TCA reflects Congress' intent to leave state commissions free, where mandated, to implement policy choices made by their states. *Global Naps, Inc. v. Mass. Dep't of Telecomm. & Energy,* 427 F.3d 34, 46 (1st Cir.2005). By ceding regulatory authority to the states, Congress sought to ensure that local competition is "implemented fairly and with due regard to the local conditions and the particular historical circumstances of local regulation...." PETER W. HUBER ET AL., FEDERAL TELECOMMUNICATIONS LAW § 3.3.4, at 227 (2d ed.1999). This approach is not antithetical to the notion of federalism. The federal government still retains an extensive oversight role. The FCC has authority to preempt state jurisdiction and has its own broad regulatory authority over the TCA. *Global Naps, Inc.,* 427 F.3d at 47.

and took away the states' ability to grant exclusive franchises to local carriers. To foster competition, Congress imposed a duty upon a local exchange carrier ("LEC") to share its network with competitors. 47 U.S.C. §§ 251(c), (d). Sharing can be accomplished, as was done here, by the requesting carrier interconnecting its own facilities with the incumbent's network.[3] 47 U.S.C. § 251(c)(2). A carrier seeking entry into a local market can elect to enter into an interconnection agreement that incorporates the terms of existing agreements between the incumbent carrier and other local competitive carriers, known as the "opt in" method, 47 U.S.C. § 252(i); or, it may negotiate its own deal. 47 U.S.C. § 252(a). The carriers have a duty to negotiate an agreement in good faith to accomplish the requesting carrier's access to the local market. 47 U.S.C. §§ 251(c)(1), 252(a). If the parties are unable to reach an agreement, they can arbitrate the terms and conditions before the appropriate state commission. 47 U.S.C. § 252(b). Once an interconnection agreement is reached, it must be approved by the state commission. 47 U.S.C. § 252(e).

Core and Verizon provide telecommunication services to customers in Pennsylvania. The Verizon companies own the local telephone infrastructure in the Northeast and Mid–Atlantic regions of the United States, including Pennsylvania, which had been constructed and maintained by their predecessor companies for decades.

On March 31, 2000, acting pursuant to the TCA, Core and Bell Atlantic–Pennsylvania, Inc., Verizon's predecessor, entered into an "opt in" interconnection agreement, adopting the terms of Verizon's agreements with two other competitors in the market. The agreement was subsequently approved by the PUC.

Core claims that after PUC approval, Verizon imposed unnecessary prerequisites to interconnection for the purpose of delaying and impeding Core's entry into the market, and increasing Core's costs. As a result, so Core alleges, it sustained unnecessary costs, and loss of revenue and customers. Core contends that Verizon breached the agreement, which incorporates the duties mandated by the TCA; failed to perform its statutory duty of good faith consistent with the intent of the TCA; and, violated several provisions of both the TCA and the 1934 Act.

Core's complaint contains four counts. The first two aver that Verizon's practices violated the 1934 Act, 47 U.S.C. §§ 201 and 202, and the Telecommunications Act of 1996, 47 U.S.C. § 251 and § 252, respectively. The remaining counts raise state law causes of action for breach of contract and fraud. Core invokes federal question jurisdiction over the statutory claims, and diversity subject matter and supplemental jurisdiction over the contract and fraud causes of action.

## Federal Subject Matter Jurisdiction

■ The jurisdictional inquiry starts with the complaint. *Club Comanche, Inc. v. Gov't of V.I.*, 278 F.3d 250, 259 (3d Cir.2002). On the face of its complaint, Core alleges, in addition to state law claims, specific violations of federal law. It claims that Verizon did not act in good faith as mandated by the TCA, violated the interconnection parity rule imposed by the FCC, engaged in discriminatory pricing in violation of both the 1934 Act and the TCA, thus frustrating the TCA's mandate.

**3.** Two other avenues for competing in the local market are the requesting carrier purchasing and reselling local telephone services from the incumbent, and leasing parts of the incumbent's network for its own use. 47 U.S.C. §§ 251(c)(3) and (4).

The TCA imposes certain obligations upon carriers to carry out Congress' purpose to promote competition in the local telephone market. 47 U.S.C. § 251. To implement those duties, Congress mandated interconnection agreements. Consequently, whether a party has violated any duty imposed by the TCA requires a determination under federal law. *Verizon Md., Inc. v. Global Naps, Inc.* 377 F.3d 355, 364 (4th Cir.2004) (*Verizon Md. II*). Thus, according to Core's complaint, Verizon's conduct strikes at the heart of the TCA.

Federal question jurisdiction in this context is informed by the Supreme Court's analysis in *International Assoc. of Machinists v. Central Airlines, Inc.* 372 U.S. 682, 691, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963). *See, e.g., Verizon Md. II,* 377 F.3d at 364 (citing *Central Airlines*). There the Supreme Court considered whether an action to enforce an arbitration award of a board established pursuant to a labor contract as required under the Railway Act presented a federal question subject to the district court's jurisdiction. It held that it is "federal law which must determine whether the contractual arrangements made by the parties are sufficient to discharge the mandate of [the Railway Labor Act] and are consistent with the Act and its purposes. It is federal law which would determine whether a [contract under the Act] is valid and enforceable according to its terms." *Central Airlines,* 372 U.S. at 691, 83 S.Ct. 956. Like the federally mandated collective bargaining agreement in that case, an interconnection agreement prescribed by the TCA is a creation of federal law and any action implicating that agreement raises a federal question. *Verizon Md. II,* 377 F.3d at 364.

The Supreme Court has declared that § 252 does not supplant § 1331 jurisdiction. *Verizon Md., Inc. v. Pub. Serv.* *Comm'n of Md.,* 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (*Verizon Md. I*). It did not decide, however, the issue of whether § 252 implicitly granted state commissions authority to interpret and enforce interconnection agreements because none of the parties had contended otherwise. *Id.* at 641–42, 122 S.Ct. 1753. Yet, its analysis of the federal court's jurisdiction under § 1331 to review a state commission's order for compliance with federal law informs how the issue may be decided.

■ Where the right to recover depends on the construction given the federal law in question, and the claim is substantial and not frivolous nor immaterial, federal courts have jurisdiction under § 1331. *Verizon Md. I,* 535 U.S. at 643, 122 S.Ct. 1753. Applying this principle to the case before it, the Court found that because Verizon's claim called for an interpretation of the TCA and the FCC's ruling issued pursuant to the TCA, it fell within § 1331's general grant of jurisdiction. *Id.*

The posture of *Verizon Md. I* was distinctly different from this case because there the state commission had already made a determination which was under judicial review. *Id.* at 642 n. 2, 122 S.Ct. 1753. The parties did not contend that the state commission had lacked the authority to initially interpret and enforce the agreement at issue. *Id.* at 642 n. 2, 122 S.Ct. 1753. The question before the Supreme Court was whether a district court had jurisdiction to decide a challenge that a state commission's determination violated federal law. *Id.* at 641–42, 122 S.Ct. 1753.

Addressing § 1331 jurisdiction after the Supreme Court remanded *Verizon Md. I,* the Fourth Circuit concluded that the contract interpretation claim involving the interconnection agreement arose under federal law because it involved duties that are creations of federal law. *Verizon Md. II,* 377 F.3d at 364. The Court viewed an

interconnection agreement as a "creation of federal law," and as the vehicle to implement the duties imposed in § 251. *Id.* (citing *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., Inc.,* 317 F.3d 1270, 1278 (11th Cir.2003) (*en banc* )). The Court stated "[t]he jurisdictional analysis must take into account the broader federal interest; it must recognize that the interconnection agreement and the duties specified therein ... have the *imprimatur* of federal law." *Id.* at 365 n. 1 (citing *Central Airlines* ) (emphasis added). In the end, the Fourth Circuit found federal question jurisdiction because the complaint called for an interpretation of a federally mandated agreement which incorporated federal law and the contractual duty at issue was imposed by federal law.[4] *Id.* at 368–69.

The dispute in this case revolves around the duties imposed by the TCA, specifically §§ 251 and 252. Consequently, it involves federal law, and its interpretation and application to the facts of this case. Here, Core prevails if the statute is given one construction, or loses, if given another. Unquestionably, determining whether Verizon breached any of its statutory duties requires an interpretation of those duties. No one suggests that Core's claims are immaterial or frivolous. Therefore, unless supplanted by another statute, there is § 1331 jurisdiction.

The other jurisdictional basis invoked by Core is the diversity statute, 28 U.S.C. § 1332. The defendant does not and cannot dispute that the parties are diverse.[5] Nor does it argue that the amount in controversy does not exceed $75,000. Thus, the requirements of diversity jurisdiction are also satisfied.

Given that subject matter jurisdiction is conferred under sections 1331 and 1332, Verizon's only avenue to the state commission on the route to final disposition would be through a grant of authority to the state by virtue of the TCA. Accordingly, the question becomes whether Congress, when it passed the TCA, intended the state commissions to interpret and enforce interconnection agreements.

## Scope of State Commissions' Authority

The TCA grants states the authority to approve interconnection agreements. 47 U.S.C.A. § 252(e)(6). It is silent on the administration and enforcement of approved agreements. Consequently, because there is no explicit authority given the states to enforce or interpret interconnection agreements, such power would have to be founded on implicit or inherent authority.

In determining whether state commissions have inherent authority to enforce interconnection agreements, one looks at the history and purpose of the TCA, its relationship to the 1934 Act, and the language of the statute. This review produces two reasonable, but contrary, interpretations. The one favoring original jurisdiction in the district court posits that Congress, after removing the states' control over the intrastate telephone markets, specified precisely what powers it was ceding back to the states, and the power to enforce interconnection agreements was not one of them. The other position, which places initial review in the state commission, rests upon inherent authority.

---

4. Following the lead of the Supreme Court, the Fourth Circuit declined to decide whether jurisdiction could be found on § 252(e)(6). *Verizon Md. II,* 377 F.3d at 366 n. 2.

5. Core is a Maryland corporation with its principal place of business there. Verizon, a Pennsylvania corporation, has its principal place of business in this state.

### FCC's Interpretation—Inherent Authority

■ There is nothing in the TCA granting or withholding authority from the state commissions to enforce interconnection agreements. Although an argument can be made that Congress did not intend the state commissions' authority to go beyond the approval process,[6] it did not say so clearly and definitively. Consequently, because the FCC has Congressional authority to implement the requirements of the TCA, it may fill the gap created by the absence of an explicit statutory grant of authority. *AT & T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 378, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999).

■ Where Congress has authorized an agency to administer a statute, the agency's interpretation of the statute is entitled to deference. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If the statute is silent or ambiguous, the agency's interpretation must be given effect as long as it is based on a permissible reading of the statute. *Id.* at 843, 104 S.Ct. 2778.

Although the TCA does not include the power to interpret and enforce approved agreements in its specifications of the state commissions' authority, the FCC, nevertheless, has determined that the state commissions have the responsibility to enforce agreements they have approved. *Starpower Commc'ns, LLC Petition for Preemption of Jurisdiction of the Va. State Corp. Comm'n Pursuant to Section 252(e)(5) of the Telecomms. Act of 1996*, 15 F.C.C.R. 11277 (2000) (*Starpower*). The FCC adopted the conclusion of the Fifth and Seventh Circuits that the state commission had inherent authority to enforce interconnection agreements. *Id.* at 11279 (citing *Ill. Bell Tele. Co. v. Worldcom Techs., Inc.*, 179 F.3d 566, 573 (7th Cir.1999) and *Southwestern Bell Tel. Co. v. Pub. Util. Comm'n of Tex.*, 208 F.3d 475, 479–80 (5th Cir.2000)).[7]

Several judges have criticized the FCC's ruling as short on analysis and its reliance on two circuit courts as misplaced.[8] Even if those critical judges were correct in their assessment of the FCC analysis and even if I agree with their criticisms, it does not permit me to disregard the FCC's ruling, which is not an unreasonable interpretation of a statute that is silent on the point.[9]

6. *See infra* discussion "The Alternative Approach" at p. 501.

7. Specifically, the FCC concluded that a state commission's failure to act under § 252(e)(6) can "in some circumstances include the failure to interpret and enforce existing interconnection agreements." *Starpower*, 15 F.C.C.R. at 11279–11280.

8. *See, e.g., Verizon Md. II*, 377 F.3d at 379–86 (Niemeyer, J., concurring in part and dissenting in part); *BellSouth Telecomm., Inc.*, 317 F.3d at 1304–05 (Tjoflat, J., dissenting in which Birch, J., joined). Other judges have simply concluded, without reference to the FCC, that the TCA does not confer enforcement authority upon the state commissions. *See, e.g., Southwestern Bell Tel. Co.*, 225 F.3d

at 949 (Arnold, J., dissenting); *see also ICG Telecom Group, Inc. v. Qwest Corp.*, 375 F.Supp.2d 1084 (D.Colo.2005).

9. Repeating his concerns with the FCC's decision which he had raised in the panel decision and in his dissent in the *en banc* decision, Judge Tjoflat emphasized that the FCC's conclusion in *Starpower* was not reasonable because the Fifth and Seventh Circuits had relied on FCC opinions which were later vacated. *BellSouth Telecomms., Inc.*, 317 F.3d at 1304–05 (Tjoflat, J., dissenting); *United States v. MCImetro Access Transmission Servs., Inc.*, 278 F.3d 1223, 1232–37 (11th Cir.2002) (panel decision). Judge Niemeyer echoed similar reservations about relying on the FCC's *Starpower* decision. *Verizon Md. II*, 377 F.3d at 381–83 (Niemeyer, J., dissenting).

**500**

*Chevron* deference is so strong that "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." 467 U.S. at 844, 104 S.Ct. 2778. Only if the agency's interpretation is unreasonable or contrary to the language of the statute can it be disregarded. 467 U.S. at 844–45, 104 S.Ct. 2778.

The FCC's *Starpower* ruling was not procedurally defective nor was it arbitrary and capricious. Furthermore, because the statute is silent on whether state commissions have authority to interpret and enforce interconnection agreements, the FCC's interpretation cannot be manifestly contrary to the statute. Hence, I must defer to the FCC ruling.

### Federal Jurisdiction Remains

The issue is not one of divestment of federal jurisdiction. Requiring parties to seek review by a state commission of a dispute arising out of an approved interconnection agreement does not exclude federal jurisdiction. It only imposes an intermediate step before getting to the federal court, not unlike an exhaustion of remedies requirement. *See, e.g.,* 42 U.S.C. § 1997e(a) (under the PLRA, before a prisoner can bring an action in federal court, he must exhaust administrative remedies); 42 U.S.C. § 2000e–5(f)(1) and 29 C.F.R. § 1601.28(a)(1) (a right-to-sue letter issued by EEOC is prerequisite to federal suit and an indication that Title VII plaintiff has exhausted his administrative remedies). In short, the difference in the two approaches is one more or less layer of litigation, and not displacement of federal jurisdiction.

The district court still has federal question jurisdiction to review a commission's alleged misinterpretation of an interconnection agreement. *Verizon Md. II,* 377 F.3d at 366. Because the state commissions have the first opportunity to decide the issue does not mean the district court must defer to their interpretations. Therefore, although initial review lies with the state commissions, federal courts are not divested of jurisdiction, but only removed from initial consideration.

Placing initial review in the state commissions is not without problems. Early resolution of disputes and judicial economy concerns are implicated by the current review regimen. The added layer of review burdens the state commissions whose decisions are then reviewable by the district court. This multi-level process delays the ultimate disposition.

There is no standard of review prescribed in the statute. The Third Circuit has determined that the PUC's legal interpretations of the TCA are subject to *de novo* review and are entitled to no deference. *MCI Telecomms. Corp. v. Bell Atlantic–Pa.,* 271 F.3d 491, 515–17 (3d Cir. 2001). Decisions of the state commission are reviewed under a substantial evidence standard. *Id.* at 517.

The losing party at the PUC gets a second opportunity to litigate its claims. If the federal court's review of the interpretation of the agreement is *de novo* and it owes no deference to the PUC's legal determination on the issue, giving the PUC the first opportunity to consider the complaint invites delay and increased litigation with attendant costs.

Verizon argues that the PUC must first decide those issues relating to the interpretation of the agreement and whether it breached its duties under it while the district court retains jurisdiction over the remaining issues. It concedes that the PUC is powerless to grant the monetary relief Core demands. Consequently, after going through the lengthy administrative process before the PUC, including hearings before an administrative law judge and later the

state commission, Core, if it prevails there, will have to pursue its damages claim at a federal bench or jury trial. In effect, the proceedings will be bifurcated. The district court will be required to parse out those factual issues that have been determined by the PUC and those that have not. On the other hand, if Verizon receives a favorable result at the PUC, Core will be entitled to what can effectively be characterized as a new trial in the district court.

## The Alternative Approach—
## No State Authority

Strict construction of the statute supports the alternate position—that the state commissions have no authority to interpret and enforce interconnection agreements. A literal reading of § 252 arguably demonstrates that Congress did not intend the states to make decisions regarding contractual disputes between parties to such agreements.

Congress specifically enumerated the powers it was ceding back to the states after it took away their unlimited ability to award monopolies in the local telephone market. The determinations left to the state commissions are the authority to resolve, through arbitration or mediation, any open issues in interconnection agreement negotiations; the approval or rejection of interconnection agreements; establishing just and reasonable rates for interconnection of facilities and equipment, and network elements; setting a schedule for implementation of the terms and conditions of the agreement; and ensuring compliance with the requirements of § 251. 47 U.S.C. §§ 252(a)(1), 252(c); *see also Global Naps v. Mass. Dept. of*

*Telecomm. & Energy,* 427 F.3d 34, 47 (1st Cir.2005).

Even the power to approve or reject interconnection agreements is circumscribed. The statutory language is clear about what the state commissions can review when deciding to approve or reject a negotiated agreement. The scope of this approval authority itself is not unlimited. Rather, it is narrowly aimed at giving states the ability to protect the interests of third parties and the public that could be affected by the agreement under review. 47 U.S.C. § 252(e)(2)(A). One can reasonably argue that it does not extend to resolving disputes that arise later between the parties to the agreement over the discharge of statutory duties and obligations imposed by the TCA. Thus, because the state commission's role is limited to protecting non-parties who may be affected by the agreement, it has no *explicit* power to decide issues between the parties, that is, to resolve disputes arising out of the contract that it has approved.[10]

When one party to an agreement seeks to enforce the approved contract, it is not seeking to protect third parties or the public but its own private rights under the contract, rights that were not statutorily subject to review by the state commission in the first instance. The dispute in this case *does not affect third parties who were* the PUC's concerns during the approval process. It only affects the parties, Core and Verizon. Hence, under the limited state authority approach, it is not a dispute properly resolved by the state commission.

When Congress wanted to give the states enforcement power, it knew how to say it, specifically using the word "enforc-

**10.** In *Verizon Md. I,* the parties did not dispute that the state commission lacked jurisdiction to interpret and enforce an interconnection agreement. 535 U.S. at 641–42, 122 S.Ct. 1753. The Supreme Court, however, declined to resolve the issue, relying on an alternative basis in concluding that the federal court had jurisdiction to review a state commission's decision. *Id.*

ing." Congress granted states the power both to establish and to enforce state law requirements. Section 252(e)(3) provides that a state commission is not prohibited from "establishing or *enforcing* other requirements of State law in its review of an agreement." 47 U.S.C. § 252(e)(3) (emphasis added). Yet, with respect to the federally imposed duties under § 251, Congress empowered the states to consider them in the approval process, but said nothing about enforcing them.

In the approval process itself, negotiated and arbitrated agreements are treated differently. When arbitrating issues left open by the parties, the state commissions are permitted to assess compliance with § 251 duties. 47 U.S.C. § 252(e)(2)(B). There is no similar delegation of authority with respect to negotiated agreements. 47 U.S.C. § 252(e)(2)(A). In short, there is no authorization to review negotiated agreements beyond assessing their potential impact upon third parties and the public.

There is nothing in its *Starpower* decision that reveals the FCC or the appellate courts whose decisions the FCC relied upon in reaching its decision considered the inability of a state commission to award damages in disputes over the interpretation and enforcement of interconnection agreements, the potential delays caused by a multi-level dispute resolution process, or the distinction between the state commission's scope of review of negotiated and arbitrated agreements. Mindful that the *Starpower* decision came at a time when the TCA was in its adolescence, the FCC may wish to revisit its *Starpower* ruling in light of the concerns highlighted here. Of course, if it did not intend the result reached by the FCC, Congress may amend the statute to clarify the review process.

## Conclusion

The FCC, which Congress unequivocally empowered to promulgate rules implementing the TCA, has determined that the state commissions can interpret and enforce interconnection agreements they have approved before a federal district court may exercise jurisdiction. The ruling is not an unreasonable interpretation of the statute. Therefore, despite any flaws in its reasoning, I must adhere to the FCC's ruling.

## *ORDER*

**AND NOW**, this 21st day of March, 2006, upon consideration of the Defendant's Motion to Dismiss (Document No. 7), the plaintiff's response, the supplemental memoranda submitted by the parties addressing issues raised by the Court, and after oral argument, it is **ORDERED** that the motion is **GRANTED** and the complaint is **DISMISSED WITHOUT PREJUDICE**.